UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE SHUKLIAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:21-cv-01497-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 14). |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 8).

　　　　Plaintiff presents the following issues:

　　　　1. Whether the ALJ failed to fully and fairly develop the record and obtain an opinion from a treating or examining medical source.

　　　　2. Whether the ALJ erred in failing to reconcile conflicts between the vocational expert testimony, the Dictionary of Occupational Titles, and the ALJ's established RFC.

      3. Whether the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of plaintiff's limitations, and failed to offer legitimate reasons for rejecting plaintiff's subjective complaints.

(ECF No. 14, p. 3) (capitalization omitted).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Failure to Develop the Record

Plaintiff first challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can never climb ladders, ropes, or scaffolds; he can occasionally climb stairs or ramps; he can occasionally balance and stoop; he can frequently kneel, crouch, and crawl; he can perform occasional overhead reaching bilaterally; he must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and dangerous machinery; and he can have no exposure to the type of welding involved in his previous work as a metal fabricator.

(A.R. 30-31).

Specifically, Plaintiff argues that "the ALJ pointed to no evidence from a treating or an examining medical professional to support this assessment" and "this gap renders the ALJ's RFC unsupported inasmuch as the RFC is based upon the opinion of a non-examining physician who reviewed only brief portion of Plaintiff's medical records." (ECF No. 14, pp. 9-10). Further, Plaintiff maintains that the ALJ reviewed some records that no medical professional had considered, making it "evident that [the ALJ] made a physical RFC determination based on his own interpretation of the raw medical evidence." (*Id.* at 12). Plaintiff contends that the ALJ was required to develop the record and obtain an opinion from a treating or examining medical source.[1]

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

---

[1] Defendant argues that Plaintiff forfeited his argument based on the duty to develop the record by not raising the issue during the administrative proceedings. (ECF No. 17, p. 5). Because, as discussed below, Plaintiff's argument fails on the merits, the Court need not address Defendant's forfeiture argument.

§ 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). "Though an ALJ determines a plaintiff's residual functional capacity . . . an ALJ is not allowed to make medical judgments, but only legal judgments based on medical evidence." *Duarte v. Saul*, No. 2:19-CV-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020). However, "because it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, . . . the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted). Lastly, an ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Although Plaintiff complains that the ALJ did not have a consultative examiner or treating physician review all the evidence and render an opinion on Plaintiff's functional limitations, the ALJ was not required to do so. *Hogan v. Kijakazi*, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *10 (E.D. Cal. Feb. 2, 2022) (noting no "rule of general applicability that an ALJ must obtain

an examining opinion in every case before rendering an RFC determination"); *see Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (noting inherent "presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work"). Moreover, the ALJ discussed the findings of three doctors in formulating Plaintiff's RFC.

First, the ALJ found persuasive the May 2019 opinion of state agency medical consultant A. Nasradbadi, M.D., who found Plaintiff capable of light work and offered functional limitations similar to those that were included in the RFC. (A.R. 34, 102-104). The ALJ found less persuasive the September 2019 opinion of state agency medical consultant, W. Jackson, M.D., who offered similar limitations, but found "greater capacity for climbing, balancing, and exposure to pulmonary irritants." (A.R. 34). The ALJ gave Plaintiff "the benefit of the doubt" and concluded that "somewhat greater limitations" might be expected given Plaintiff's medical history. (A.R. 34, 115-117). Lastly, the ALJ commented on a restriction assigned by a treating physician Ashok Verma, M.D., finding persuasive the doctor's recommendation that Plaintiff not be around welding much or very much because of his pacemaker. (A.R. 35, 540). Again, giving Plaintiff "the benefit of the doubt," the ALJ found "it reasonable to limit [Plaintiff] to no exposure to the type of welding involved in the claimant's previous work as a metal fabricator." (A.R. 35).

Likewise, "the fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020). This is because "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished). "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished). Accordingly, the record was neither ambiguous nor inadequate so as to require the ALJ to further develop the record.

Additionally, review of the ALJ's opinion does not show that the ALJ made medical

judgments based on a lay understanding of the evidence. Among other things, the ALJ recounted Plaintiff's daily activities, noting that he was able to drive, shop for groceries, do light yard work, and basic household chores, which suggested that he was not as limited as he claimed. (A.R. 31). And the ALJ observed that Plaintiff did not often report difficulty walking, dizziness, shortness of breath, or chest pain in his medical records, thus suggesting that his symptoms were not as severe as claimed. (A.R. 32-34) (citing, as one example, A.R. 535 – April 10, 2019 medical record noting "[n]o chest pain, shortness of breath, palpitations"). Moreover, the ALJ noted that Plaintiff had a "very good response" to a cervical spine surgery, which indicated improvements in symptoms that Plaintiff claimed were disabling. (A.R. 34).

Lastly, Plaintiff fails to show that the evidence warranted even further exertional limitations than the ALJ assessed, and thus there is no basis to conclude that the disability determination would have changed had the ALJ solicited further medical opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC").

**B.     DOT Conflict**

Plaintiff next argues that the ALJ failed to reconcile a conflict between the vocational expert (VE) testimony, the DOT, and the RFC assessment. Specifically, Plaintiff argues that the jobs that the VE said Plaintiff could perform—wire harness assembler, electric motor assembler, and electronics assembler—"do not actually conform to the RFC" because they require soldering, maintaining that it is "common sense that heating up metal would result in noxious fumes," thus precluding him from these jobs based on the RFC assessment requiring him to "avoid concentrated exposure to fumes, odors, dusts, gases, [and] poor ventilation." (ECF No. 14, p. 13; A.R. 31).

Plaintiff's argument relies on SSR 00-4p, which, in pertinent part, provides as follows:
> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . .

> evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

*Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000), available at 2000 WL 1898704. Upon review of the record, the Court finds no error regarding the requirements of SSR 00-4P.

As Defendant points out, none of these jobs require soldering but only note that soldiering may be one task performed. (Wire harness assembler, 728.684-010, 1991 WL 679681, "May attach ends of wires to components, plugs, or terminal strip, using soldering iron or crimping device."); (Electronics assembler, 726.684-018, 1991 WL 679596, "Crimps, stakes, screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place, using handtools, power tools, machines, and equipment."); (Electric-motor assembler, 721.684-022, 1991 WL 679503, "Solders or screws electrical leads to brushes, and switch and cord assembly, using soldering iron."). Moreover, none of these job descriptions indicate that any soldiering that would be performed would subject Plaintiff to concentrated exposure to fumes, odors, or gases. As the ALJ noted, these jobs do not require the welding that Plaintiff previously performed and was now prohibited from doing: "[T]he prohibition on doing the welding that was involved in the claimant's past relevant work as a metal fabricator has no effect on his ability to perform the job of electronics assembler or the other two occupations identified by the vocational expert, which do not involve any activity characterized as welding." (A.R. 38).

Notably, "[f]or a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Here, based on the lack of information to conclude that Plaintiff would be exposed to the types of concentrated fumes, odors, or gases limited by the RFC, the Court finds no conflict between the VE testimony, the DOT, and the RFC.

### C. Plaintiff's Subjective Complaints

Lastly, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject his subjective complaints and failed to include limitations from those complaints in the RFC assessment. (ECF No. 14, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 32). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and daily activities as follows:
> The claimant alleges disability due to bradycardia and sick sinus syndrome requiring pacemaker placement; degenerative disc disease/spondylosis, stenosis, and myelopathy of the cervical spine with cervicalgia, which he testified was helped "a lot" by surgery, but still causes constant neck pain or soreness; and back pain (*See* ex. 2E/2; testimony). He reports having fatigue or tiredness, frequent dizziness, shortness of breath, constant headaches, weakness, reduced endurance, the feeling that his heart rate is dropping, and limited movement in his neck with difficulty looking "too far" up or down or side to side (*See* ex. 4E; testimony). However, he describes being able to drive, shop for groceries twice a week, do light yard work, and do about half of the household dusting, vacuuming, and

> washing (*See* ex. 4E; testimony). Nonetheless, the claimant indicates that he has much more difficulty with household tasks and yard work than he did before and requires frequent rest breaks while doing them (*See* ex. 4E; testimony). He states that he tries to walk around the block, at the market, or around his house every day, but has difficulty keeping a steady pace without becoming tired and experiencing shortness of breath (*See* ex. 4E). He reports that he does not lift much, having been instructed to lift no more than 60 pounds infrequently, he does not climb stairs, and he can carry some lighter items (*See* ex. 4E). The claimant testified at the hearing that he can lift only 10 to 15 pounds, sit and stand for 15 minutes at a time each, and walk for five minutes at a time and that holding his hands out in front of him for more than five minutes makes his lower back and neck hurt. He further describes lying down to rest or nap for two to three hours each day (*See* ex. 4E; testimony).

(A.R. 31).

After an extensive review of the medical evidence, the ALJ summarized it as follows:

> The medical evidence discussed above documents the claimant's very good response to an August 2018 cervical spine surgery with no subsequent complaints of difficulty reaching or, in fact, of any symptoms or limitations related to his neck or upper back following his recovery from that surgery. It also documents no complaints of lower back pain during the period from the alleged onset of disability until August 2020, when he experienced an acute lower back injury followed by a few months of increased pain, though examinations showed no neurological deficits. The medical evidence further revealed his good recovery from pacemaker placement in December 2018 with reports of doing well and no indications of significant limitations other than his descriptions of being very limited in his activities in mid-2019, at the same time that he requested completion of disability paperwork, and infrequent reports of only mild, intermittent cardiac symptoms except for in October 2019, when he experienced increased symptoms that resolved with re-stenting of his LAD artery, and in December 2020, when he declined cardiac catheterization and was started on a new medication. Finally, the medical evidence documents no reports of needing to lie down to rest or nap during the day and only one complaint of headache, associated with intermittent, exertional shortness of breath, in December 2020, when the claimant was started on a new cardiac medication. Thus, the medical evidence substantially fails to support the alleged severity of his symptoms and limitations.

(A.R. 34).

The Court concludes that the ALJ provided "findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's

1  testimony, nor do they require ALJs to draft dissertations when denying benefits.").

2  First, Plaintiff's daily activities, such as being able to engage in household chores, suggest that his disabling complaints of fatigue, shortness of breath, and dizziness were not as severe as Plaintiff complained. *Thomas*, 278 F.3d at 959 (finding ALJ gave specific, clear and convincing reasons to discount testimony where the ALJ, in part, noted the claimant's ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping"). Moreover, the lack of supporting evidence for some complaints, such as needing to lie down, was another legitimate basis to discount his testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Further, the inconsistencies between the medical records, which generally reported normal results and good recovery, were inconsistent with the extent of Plaintiff's complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility).

While Plaintiff points to a different interpretation of the record, arguing that his symptoms were more severe than the ALJ found, this, at most, presents another "rational interpretation" of the record, which means that "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

## II.  CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **January 4, 2023**                    /s/ *Erica P. Grosjean*
                                                                  UNITED STATES MAGISTRATE JUDGE

9